NELLIE F. BENNETT & another *vs.* DORCEY C. NEWELL & another.

Suffolk.    November 13, 1928. — January 31, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT & SANDERSON, JJ.

*Easement*, Of drainage, Extinguishment. *Deed*, Construction. *Evidence*, Extrinsic affecting writing. *Words*, "Substantially."

While, in construing the language of a deed, given in 1920 and granting a right of way and of drainage on land on West Cedar Street in Boston for the benefit of a dwelling house on Bellingham Place so long as a building then on the dominant estate "stands and remains substantially in its present condition," the provisions of the building law of Boston, St. 1907, c. 550, § 13, as amended by Spec. St. 1915, c. 352, § 13, that "No alteration or repairs of a wooden building within the building limits [of Boston] shall be made without a permit from the commissioners . . . nor shall a permit for alterations or repairs be granted if the estimated cost of the proposed alterations or repairs exceeds one half of the cost of a like new building," must be borne in mind, they had no significance, in a suit in equity by the grantee in the deed to enjoin an alleged obstruction of such easements by a successor in title of the grantor, who contended that substantial changes had been made in the dwelling house, if there was no direct evidence that the dwelling house was within the building limits of Boston nor any evidence of the cost of a like new building.

The word "substantially" in the grant above described meant "really or essentially."

The judge who heard the suit above described found in substance that the grantor of the easement himself prepared the drain and the passageway to be used; that the dwelling house, a wooden frame building, at that time was worth about $2,500, was in a dilapidated condition, roof leaking, windows and sashes broken, chimney unsafe, clapboards loose and broken, plastering and painting in a state of disrepair, with a need of two new floor timbers and one new wall; but that the frame work was sound; that in 1927, the plaintiff repaired and refitted it at an expense of about $4,000, to render it more comfortably habitable without making any change in its height, length or breadth, or in its structure other than putting in a partition for a bathroom, rebuilding one wall, and substituting two beams in a floor; that the old plumbing was taken out and new substituted, thus adding materially to the plumbing fixtures without changing the drain pipe, but that the new appliances did not require a larger sewer pipe than the one laid by the creator of the easement of drainage; and that as a result of the repairs a somewhat ruinous and undesirable house became a respectable and

comfortable residence. The judge ruled and found that the building remained substantially in the condition in which it was at the time of the grant of the easement, and a final decree for the plaintiff was entered. *Held,* that

(1) No greater burden was placed upon the servient estate in consequence of the changes;

(2) The amount of expenditure was not the sole measure of essential change;

(3) The judge's conclusion was warranted;

(4) The easements had not been terminated, and the decree for the plaintiff properly was entered.

The language of the grant in the deed above described was not ambiguous, and, at the hearing of the suit, evidence of conversations between the original parties to the grant was incompetent to prove the meaning of the words used.

BILL IN EQUITY, filed in the Superior Court on April 13, 1927, by the owners of a lot of land with a dwelling house thereon on Bellingham Place in Boston against the owner of premises numbered 59 and 61 on West Cedar Street to enjoin the obstruction of a right of way and of drainage claimed by the plaintiffs under a deed dated June 14, 1920, to the plaintiffs from the predecessor in title of the defendants.

In the Superior Court, the suit was heard by *Sisk,* J., a stenographer having been appointed under the provisions of G. L. c. 214, § 24, Equity Rule 29 (1926), to take the testimony. Material facts found by the judge are stated in the opinion. Rulings asked for by the defendants and refused by the judge as "immaterial and inapplicable," were as follows:

"4. Any substantial change in the condition of the building on the plaintiffs' land from its condition as of June 14, 1920, the date of the instrument creating the rights of way and drainage, will terminate the plaintiffs' rights over the defendants' property.

"5. The fair construction of the clause which fixes the continuance of the easement, contemplates not only its termination by substantial changes in the way of new buildings replacing the structures then on the premises, but substantial changes in the then present condition of the then present building.

"6. The expenditure of large sums of money remodelling an old building in dilapidated condition into a habitable structure in good condition would be substantial changes.

"7. The expenditure of large sums of money in the removal of old unused plumbing and the installation of modern plumbing, with a considerable increase in the number of fixtures, the installation of a boiler, radiators and heating equipment, where formerly there had been none, the replastering, repainting and general reconditioning of an old structure amounts to a substantial change in the condition of the building.

"8. The use of the building as reconstructed by the plaintiff would impose new and considerable servitudes upon the defendants' property which were not in the contemplation of the grantor at the time of the creation of the easement."

A final decree was entered for the plaintiffs. The defendants appealed.

G. H. McDermott, (J. E. Nally with him,) for the defendants.

T. W. Proctor, (R. W. Nason with him,) for the plaintiffs.

WAIT, J. This is an appeal from a decree of the Superior Court restraining interference with rights of way and of drainage claimed by the plaintiffs over premises of the defendants. The evidence is reported.

The proper determination depends upon the interpretation to be given to the language of the deeds to the plaintiffs creating the easements, and providing that they should continue only so long as a building which, on June 14, 1920, stood on the dominant estate fronting on Bellingham Place in Boston "stands and remains substantially in its present condition"; and the decision whether, as matter of fact, they had ceased to exist when the bill was brought, because the building had been changed substantially and no longer remained in that condition.

There is no dispute that the building still stands. In June of 1920 it was a wooden frame building in dilapidated condition. A basement door opened upon the level of the rear of the premises on West Cedar Street, now owned by

the defendants. Another door two floors higher opened upon the level of Bellingham Place. The building extended two stories above Bellingham Place. In the basement story there was a toilet. On the next floor was a sink. On the floor above there was another sink. These with the appropriate fixtures of a period fifty years earlier than 1920 were the only water supply fixtures of the building. It had generally been used for two families; but, occasionally, had been occupied by a large single family. At the moment of the grant, it was used as a studio and for storage by an artist who sublet part of the house. The condition of the plumbing was such that the flow of water from the uppermost sink siphoned the traps of the fixtures on the lower floors and thereby rendered the house uninhabitable for one with a keen sense of smell. The windows and sashes were broken, the chimney was unsafe, the clapboards were loose and broken. The house needed renewed plastering and painting. The roof leaked. The frame work, however, was sound although two new floor timbers and a new wall on the Bellingham Place side were needed. While he remained owner of the servient premises, the grantor of the easements in question himself prepared the drain and the passageway to be used. He sold the servient estate in 1921 to the defendants' predecessors in title.

In 1920 the dominant premises were worth about $2,500. In 1927, the building was repaired and refitted to render it more comfortably inhabitable at an expense of about $4,000. No change was made in its height, length or breadth, or in its structure other than putting in a partition for a bathroom, rebuilding the wall on Bellingham Place, and substituting two beams in a flooring. The old plumbing was taken out, and new substituted. This added materially to the fixtures. Set tubs, a new toilet, new sinks, were introduced. But the drain pipe was not changed. The new appliances did not require a larger sewer pipe than the one laid by the creator of the easement of drainage. The roof was repaired. Windows and sashes were repaired or replaced. New clapboards were put on where needed. The chimney was rebuilt and, in places, a new casing was made. The plastering was

renewed. The place was repainted. As a result, a some-
what ruinous and undesirable house became a respectable
and comfortable residence.

The judge, who took a view of the premises, ruled and
found, however, that the building remains substantially in
its condition of June 14, 1920. He made a decree that the
easements had not come to an end; and restrained inter-
ference with them.

The defendants contend that the finding is wrong in fact
and the ruling erroneous in law. St. 1907, c. 550, § 13, as
amended by Spec. St. 1915, c. 352, § 3, so far as here material
provides that "No alteration or repairs of a wooden building
within the building limits [of Boston] shall be made without
a permit from the commissioners, . . . nor shall a permit
for alterations or repairs be granted if the estimated cost of
the proposed alterations or repairs exceeds one half of the
cost of a like new building." This was the law in force at
the date of the grant of these easements. The defendants
contend that the language of the deed creating the easements
must be construed with this law in mind. This contention
is sound. *Haven* v. *Foster*, 9 Pick. 112, 128.

Nevertheless there was here no direct evidence that the
locus was within those building limits, nor any evidence of
the cost of a like new building. No permit was obtained
except for the new partition for the bathroom and the lining
of the flue; but all the work was done under inspection from
the building department of the city. The evidence does not
require a finding that what was done was in violation of the
statute, or within what must be understood to be changes re-
garded as substantial by parties having the statute in mind.

No greater burden is placed upon the servient estate in
consequence of the changes. The word "substantially"
should be given the meaning "really or essentially" attri-
buted to it in *Commonwealth* v. *Wentworth*, 118 Mass. 441,
442. There has been a change; but in its essential char-
acteristics of structure, use, and adaptability the building
remains a wooden frame building adapted to use by two
families, with new plumbing which does not require larger
outflow piping than was provided for the old. The grantor

measured the burden on the servient estate when he put in the pipe for the sewage. See *Naumkeag Steam Cotton Co. v. American Glue Co.* 244 Mass. 506, 508. The amount of expenditure is not the sole measure of essential change.

The judge was right in holding the requests 4, 5, 6, 7 and 8 to be immaterial in view of his findings.

Evidence of conversation between the original parties to the grant was clearly incompetent to prove the meaning of the words used. Owners subsequent to them can be affected only by the language of the deeds. There is nothing ambiguous about it. We understand no reliance was placed by the trial judge upon such evidence offered and we disregard it in passing upon the evidence reported.

Nothing requires finding that the grantees undertook to let the building fall to pieces after June 14, 1920, or that the grantor and his successors in title could fairly so interpret the grant. It follows that entry must be made

*Decree affirmed with costs.*